UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAUL RENFRO HARBISON, JR., <br><br> Plaintiff, <br><br> v. <br><br> U.S. SENATE COMMITTEE ON FOREIGN RELATIONS, *et al.*, <br><br> Defendants. | Civil Action No. 11-01828 (BAH) <br> Civil Action No. 11-01965 (BAH) <br> Judge Beryl A. Howell |

**MEMORANDUM OPINION**

In a span of less than two months, Plaintiff Paul Renfro Harbison, Jr., a *pro se* litigant, filed three complaints in this Court against dozens of federal and state officials, government agencies, members of the Judiciary, law firms, and private citizens. One complaint has already been reviewed and disposed of by this Court, and two complaints remain pending.[1] The plaintiff's claims appear to stem from divorce proceedings initiated in 2007 by his alleged wife in Spotsylvania, Virginia Circuit Court, which led to his subsequent indictment for unlawful marriage and bigamy. His claims in the two remaining actions pending in this Court include wide-ranging allegations of violations of the United States and Korean Constitutions, kidnapping, human trafficking, forced marriage, and war crimes violations. Seven Motions to Dismiss, pursuant to Rules 12(b)(1), 12(b)(5), and 12(b)(6), have been filed in these matters and

---

[1] The plaintiff's petition for habeas corpus relief filed on October 31, 2011 was dismissed for lack of jurisdiction. *See Harbison v. Beck, et al.*, No. 11-1900, 2011 U.S. Dist. LEXIS 129713 (D.D.C. Nov. 9, 2011). That habeas petition was filed against three Virginia officials who are also named as defendants in the two complaints now before this Court.

are currently before the Court.[2]  For the reasons explained below, the Court will consolidate the plaintiff's lawsuits into a single action, grant the pending motions to dismiss, and *sua sponte* dismiss the complaints with prejudice against the non-moving defendants.

I.    BACKGROUND AND FACTUAL ALLEGATIONS

Presently before this Court are motions to dismiss by some of the defendants named in two complaints filed by the plaintiff.  On October 17, 2011, the plaintiff filed a 76-page complaint with allegations enumerated in 86 numbered paragraphs against 48 defendants in *Harbison v. U.S. Senate Committee on Foreign Relations*, *et al.*, Case No. 11-cv-1828 (BAH).  On November 8, 2011, the plaintiff filed an 89-page complaint with allegations enumerated in 99 numbered paragraphs against 36 defendants in *Harbison v. Sec'y of the Army*, *et al.*, Case No. 11-cv-1965 (BAH).  The first complaint is styled as a "Writ of Habeas Corpus" and a "Writ of Error" and also includes allegations of "War Crimes Violations."  *See* Case No. 11-cv-1828, ECF No. 1 ("Compl. I").  The second complaint alleges, *inter alia*, violations of the United States Constitution, the Republic of Korea Constitution, various federal and Virginia statutes, various international treaties, and includes claims of "Manifest Fraud;" "Human Trafficking;" "Slavery;" "War Crimes Violations;" "Crimes Against Humanity;" "Human Rights Violations;" and "Judicial Misconduct."  *See* Case No. 11-cv-1965, ECF No. 1 ("Compl. II").

---

[2] Motions to Dismiss have been filed in Case No. 11-cv-1828 by the Commonwealth of Virginia *ex rel.*, Governor Bob McDonnell, Justice Cynthia Kinser, Justice William Mims, Judge Theodore Markow, Judge Jean Harrison Clements, Justice Cleo Powell, Judge Robert J. Humphreys, Attorney General Kenneth Cuccinelli, Assistant Attorney General Christy Monolo, Judge David Beck, Judge Joseph Ellis, Judge Gary Hicks, and Judge Margaret W. Deglau, *see* ECF No. 9;The Committee on Foreign Affairs of the U.S. House of Representatives, *see* ECF No. 13; Edith M. Min, John C. Bowers, John Lowery, William Neely, Howard Smith, and Deputy Charles Carey, *see* ECF No. 16; and Junko Harbison, Megumi Ezure, Makoto Ezure, W. Joseph Owen, III, Esq., Kimberly A. Skiba, Esq., and Owen & Owens PLC, see ECF No. 17.  Motions to Dismiss have been filed in Case No. 11-cv-1965 by the Commonwealth of Virginia *ex rel.*, Governor Bob McDonnell, Chief Justice Cynthia Kinser, Justice William Mims, Judge Theodore Markow, Judge Jean Harrison Clements, Justice Cleo Powell, Judge Robert Humphries, Attorney General Kenneth Cuccinelli, Assistant Attorney General Christy Monolo, Judge David Beck, Judge Joseph Ellis, Judge Gary Hicks, and Judge Margaret Deglau, *see* ECF No. 7; Edith M. Min, Jason C. Bowers, John Lowery, William Neely, Howard Smith, and Deputy Charles Carey, *see* ECF No. 12; and Junko Harbison, Megumi Ezure, Makoto Ezure, W. Joseph Owens, III, Esq., Kimberly A. Skiba, Esq., and Owen & Owens, PLC, *see* ECF 13.

Despite the differences in legal theories asserted in the two complaints, the factual allegations and defendants are largely overlapping. Specifically, the defendants named in the complaints may be grouped as follows:

1. U.S Senate Committee on Foreign Relations and U.S. House Committee on Foreign Affairs ("Congressional Defendants");[3]

2. Department of Defense; Secretary of Defense; Department of the Army; Secretary of the Army; General Thurman, Commander, U.S. Forces, Korea ("USFK"); Colonel McKitrick, USFK Judge Advocate (collectively, "U.S. Military Defendants");[4]

3. Robert L. Gregory, Dennis W. Shedd, Barbara M. Kennan, Robert E. Paine; Dennis W. Donhal (collectively, "Federal Judicial Defendants");[5]

4. Commonwealth of Virginia; Bob McDonnell as Governor of Virginia; Kenneth T. Cuccinelli, II, as the Commonwealth's Attorney General; Assistant Attorney General Christy W. Monolo; Spotsylvania County Prosecutors Edith M. Min, John C. Bowers, Matthew B. Lowery, and William Neely; Henrico County Prosecutor Wade Kizar; Spotsylvania County Sheriff Howard Smith; Spotsylvania County Deputy Charles Carey (collectively, "Commonwealth and County Official Defendants");[6]

5. David Beck; Joseph Ellis; Gary A. Hicks; Margaret W. Deglau; Theodore Markow; Jean Harrison Clements; Cleo E. Powell; Robert J. Humphreys (collectively, "Commonwealth and County Judicial Defendants");[7]

6. Owens & Owens, PLC; W. Joseph Owens, III; Kimberly A. Skiba; Sullivan & Secklii; Carolyn Secklii; Junko Ezure; Makoto Ezure; Megumi Ezure (collectively, "Civilian Defendants");[8] and

7. Korean Constitutional Court Chief Justice; Seoul Seodaemun Police Station Superintendent; Yong Suk Cho; Jin Suk Hyun (collectively "Korean Defendants").[9]

---

[3] The Congressional Defendants are named only in Case No. 11-cv-1828.
[4] Most of the U.S. Military Defendants are named in both complaints. The Department of Defense and the Secretary of Defense, though, are named only in Case No. 11-cv-1828.
[5] The Federal Judicial Defendants are named in both complaints.
[6] The Virginia Commonwealth and County Official Defendants are named in both Complaints, with the exception of Spotsylvania County Deputy Charles Carey, who is named only in Case No. 11-cv-1828, where he is identified as "Spotsylvania County Deputy Carey/Casey/Casy."
[7] The Commonwealth and County Judicial Defendants are named in both complaints.
[8] The Civilian Defendants are named in both complaints.
[9] The Korean Defendants are named only in Case No. 11-cv-1828.

The two complaints consist of sweeping allegations of wrongdoing by the defendants and by other named and unnamed parties. As noted, the plaintiff's allegations stem from the plaintiff's divorce and subsequent indictment for unlawful marriage and bigamy. In both complaints, the plaintiff claims to be a "white, American citizen" who is "unmarried" and "has never married or divorced in Virginia." *See* Compl. I at ¶¶ 1, 2; Compl. II at ¶¶ 1, 4. He states that he has been married only once, to Kyung Ae Harbison, with whom he was legally divorced in October, 2003. Compl. I at ¶ 2; Compl. II at ¶ 5. Nevertheless, the plaintiff details in the complaints that another person, Junko Ezure, filed for divorce from the plaintiff in Spotsylvania Circuit Court in 2007, and that the plaintiff "counterclaimed that the marriage was fraudulent." Compl. I at ¶ 3; Compl. II at ¶ 6. Indeed, the plaintiff denies that he voluntarily or legally married Junko Ezure (also known as Junko Harbison). Compl. I at ¶ 2; Compl. II at ¶ 5. According to a "Report and Certificate of Marriage" issued by the U. S. Embassy in Seoul, Korea, however, the plaintiff "participated in a marriage ceremony" with Junko Ezure in November, 2002, which was before his divorce from Kyung Ae Harbison was final. *Harbison v. Harbison*, No. LC 07-1128, (Va. Cir. Ct. Jan. 7, 2009) (ECF 1, Ex. A). Accordingly, the Circuit Court found, on January 7, 2009, that the marriage to Junko Ezure was "absolutely void" pursuant to Virginia Code §§20-38.1(a)(1) and 20-43 because the plaintiff was still married at the time of his marriage to Junko Ezure. *Id*. During the pendency of the divorce proceedings, the plaintiff apparently was arrested for "stalking" Junko Ezure, and indicted by a state grand jury for bigamy and unlawful marriage. *Harbison v. Commonwealth of Va.*, No. 10-cv-297, 2010 WL 3655980, at *1-2 (E.D. Va. Aug. 11, 2010). "The charges were subsequently *nolle presequied* on the motion of the Assistant Attorney for the Commonwealth in January 2009." *Id*. at *2.

Although both the divorce proceedings and the criminal charges were resolved, the plaintiff continued to seek judicial review. He appealed the Circuit Court's decision to declare his marriage to Junko Ezure void, which was summarily affirmed by the Court of Appeals of Virginia on January 12, 2010. *Id.* at *1. Following dismissal of the criminal charges against him, he filed a Petition for Writ of Mandamus to the Supreme Court of Virginia, which was refused on May 27, 2010. *Id*. at *2. The plaintiff then filed a 56-page complaint on May 5, 2010, in U.S. District Court for the Eastern District of Virginia against some of the Commonwealth and County Official and Judicial Defendants and Civilian Defendants in this case, alleging various constitutional violations committed against the plaintiff in the prior divorce and criminal proceedings in state court, as well as violations of treaties between the United States and Japan and Korea. *Id*. at *1-2. On September 10, 2010, that case was dismissed. *See Harbison v. Commonwealth of Va. ex rel. Cucinelli*, No. 10-cv-00297, 2010 WL 3655977 (E.D. Va. Sept. 10, 2010). The Fourth Circuit summarily affirmed the dismissal on February 28, 2011. *See Harbison v. Cuccinelli*, 413 Fed. Appx. 626 (4th Cir. Feb. 28, 2011) (per curium).

In the instant complaints, the plaintiff alleges that some of the defendants violated the Constitution to "aid and abet in the hostage taking, human trafficking and kidnapping of a U.S. citizen by Japanese citizens in Korea and the United States." Compl. I at ¶ 1; Compl. II at ¶ 2. The plaintiff further alleges that these unidentified Japanese citizens were involved with forced marriage, a "human rights violation that denies men the right to make any choices about their own lives, including when and whom to marry and whether to remain married." Compl. I at ¶ 1; Compl. II at ¶ 3. The plaintiff contends that some of the defendants, who are members of the Judiciary, "provided the forum non conveniens court to aid and abet the Japanese kidnappers,

5

human traffickers, hostage takers and illegal immigrants in direct violation of the U.S. Constitution . . ." Compl. I at ¶ 3; Compl. II at ¶ 6.  The plaintiff also accuses some of the named defendants of being "liars and war criminals" for their involvement in adjudicating the plaintiff's divorce.  Compl. I at ¶¶ 13, 23.  For the reasons explained below, the Court will dismiss the plaintiff's complaints with prejudice.

The Court will first address the consolidation of the two pending actions and then the basis for dismissing the complaints.

## II.     CONSOLIDATION OF THE CASES

Under the Federal Rules of Civil Procedure, this court may consolidate cases when actions contain "a common question of law or fact."  FED. R. CIV. P. 42(a)(2).  "Consolidation allows courts to avoid the squandering of resources in unnecessary proceedings, and district courts have the authority to exercise discretion in determining if such consolidation is appropriate."  *Middlebrooks v. Godwin Corp.*, Nos. 11-00922, 11-00924, 2011 WL 5395656, at *4 (Nov. 9, 2011); *see also Nat'l Ass'n of Mort. Brokers v. Board of Governors of the Federal Reserve Sys.*, 770 F. Supp. 2d 283, 286 (D.D.C. 2011) (in deciding whether to consolidate matters, courts must "weigh the risk of prejudice and confusion wrought by consolidation against the risk of inconsistent rulings on common factual and legal questions, the burden on the parties and the court, the length of time, and the relative expense of proceeding with separate lawsuits if they are not consolidated").  The Court concludes that consolidation is warranted here.  The plaintiff's complaints arise from the same core factual allegations, involve mostly the same parties, and vary only in the nature of the legal claims asserted against the parties.  Therefore, the Court will consolidate the plaintiff's actions, Nos. 11- cv-1828 and 11-cv-1965, into a single consolidated action (Case No. 11-cv-1828).

### III.  LEGAL STANDARD

As noted above, seven motions to dismiss the complaints in this case are pending before the Court.  One of the Congressional Defendants, the Committee on Foreign Affairs of the U.S. House of Representatives, has moved to dismiss the complaint against it, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, on grounds that the plaintiff lacks standing, the suit is barred by sovereign immunity and the Speech or Debate Clause, and fails to state a claim.  *See* Case No. 11-cv-1828 (BAH), ECF No. 13.  A group of the Commonwealth and County Official Defendants and the Commonwealth and County Judicial Defendants have moved to dismiss, pursuant to Rules 12(b)(1), 12(b)(2) and 12(b)(6), for lack of personal jurisdiction over these defendants, subject matter jurisdiction, and failure to state a claim.  *See* Case No. 11-cv-1828, ECF No. 9; Case No. 11-cv-1965, ECF No. 7.  Another group of Commonwealth and County Official Defendants have also moved to dismiss, pursuant to Rules 12(b)(1) and 12(b)(6).  *See* Case No. 11-cv-1828, ECF No. 16; Case No. 11-cv-1965, ECF No. 12.  Finally, most of the Civilian Defendants have moved to dismiss the suit pursuant to Rule 12(b)(1), Rule 12(b)(2), and Rule 12(b)(6). [10]  *See* Case No. 11-cv-1828, ECF No. 17; Case No. 11-cv-1965, ECF No. 13.  The legal standards applicable to these motions are summarized below.

On a motion to dismiss for lack of subject matter jurisdiction, under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiffs bear the burden of establishing jurisdiction by a preponderance of the evidence.  *Mostofi v. Napolitano*, No. 11-0727, 2012 U.S. Dist. LEXIS 9563, at *4 (D.D.C. Jan. 27, 2012) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)); *Ki Sun Kim v. United States*, No. 08-01660, 2012 U.S. Dist. LEXIS 2094, at *8 (D.D.C.

---

[10] The Civilian Defendants have also moved for Rule 11 sanctions against the plaintiff.  *See* Case No. 11-cv-1828, ECF No. 18; Case No. 11-cv-1965, ECF No. 14.

Jan. 9, 2012); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). As the Supreme Court has explained "many times," the "district courts of the United States . . . are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.'" *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005) (*quoting Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)) (internal quotation marks omitted); *see also Micei Int'l v. DOC*, 613 F.3d 1147, 1151 (D.C. Cir. 2010) ("[T]wo things are necessary to create jurisdiction in an Article III tribunal other than the Supreme Court . . . The Constitution must have given to the court the capacity to take it, *and an act of Congress must have supplied it*.") (internal citations and quotation marks omitted). For this reason, a "federal district court's initial obligation is to ascertain its subject matter jurisdiction." *Malyutin v. Rice*, 677 F. Supp. 2d 43, 45 (D.D.C. 2009), *aff'd*, No. 10-5015, 2010 U.S. App. LEXIS 13869 (D.C. Cir. July 6, 2010). When a court lacks subject matter jurisdiction, it must dismiss the case. *See Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 48 (D.D.C. 2011); *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 62 (D.D.C. 2007).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ] [his or her] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 557). Instead, the complaint must plead facts that are more than "merely consistent with" a defendant's liability; "the plaintiff [must plead] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949, 1940;

*Rudder v. Williams*, No. 10-cv-7101, 2012 WL 119589, at *2 (D.C. Cir. Jan. 17, 2012).  The Court must "assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 17 (D.C. Cir. 2008) (internal quotations and citations omitted).

Complaints filed by pro se plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).  Even a pro se complainant, however, must plead "factual matter" that permits the court to infer "more than the mere possibility of misconduct." *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 682 (D.C.Cir.2009) (citing *Iqbal*, 129 S.Ct. at 1950).

**IV.   DISCUSSION**

The plaintiff asserts broad, sweeping allegations against the defendants in his two complaints.  In response, defendants have filed a total of seven motions to dismiss.  The Congressional Defendants have moved to dismiss the claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *See* Case No. 11-cv-1828.  A group of the Commonwealth and County Official and Judicial Defendants have moved to dismiss the plaintiffs' complaints, pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6).  *See* Case No. 11-cv-1828, ECF No. 9; Case No. 11-cv-1965, ECF No. 7.  Another group of the Commonwealth and County Official Defendants have moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6).  *See* Case No. 11-cv-1828, ECF No. 9; Case No. 11-cv-1965, ECF No. 7.  Finally, most of the Civilian Defendants have moved to dismiss the suit pursuant to Rule 12(b)(1), Rule 12(b)(2), and Rule 12(b)(6).  *See* Case No. 11-cv-1828, ECF No. 17; Case No. 11-cv-1965, ECF No. 13.  As explained below, the plaintiffs' claims are dismissed because they (1) fail to state a claim for relief under Federal Rule

of Procedure 12(b)(6) for all of the defendants in Compl. I; are either barred by (2) res judicata, (3) the Rooker-Feldman doctrine, or (4) the doctrine of judicial immunity; and (5) are "frivolous" under 28 U.S.C. § 1915(e)(2)(B)(i). Accordingly, the plaintiff's claims are dismissed with prejudice.

### A. The Plaintiff Fails to State a Claim Under Rule 12(b)(6)

In order to survive a Motion to Dismiss under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Committee on Foreign Affairs of the U.S. House of Representatives has argued in its Motion to Dismiss that the plaintiff has failed to do so. *See* Case No. 11-cv-1828, ECF No. 13, Defs.' Mem. in Supp. of Mot. to Dismiss at 6-8. The Court agrees, insofar as it relates not only to the Committee on Foreign Affairs of the U.S. House of Representatives, but also to the plaintiff's claims against all of the defendants in Case No. 11-cv-1828.

The plaintiff has not asserted a single claim for which he could be granted relief. First, the plaintiff seeks a "Writ of Error," which is a form of relief that is no longer available in civil cases. *See, e.g.*, *Bonnadonna v. Unknown Defendant*, 181 F. App'x 819, 824 (11th Cir. 2006) ("the writ or error [plaintiff] seeks is not available in civil cases"). Second, the plaintiff is seeking a "Writ of Habeas Corpus." As noted *supra*, the Court has already ruled on a habeas petition by the plaintiff. *See Harbison v. Beck*, No. 11-1900, 2011 U.S. Dist. LEXIS 129713 (D.D.C. Nov. 9, 2011). As this Court earlier concluded, "[a] person seeking a writ of habeas corpus must satisfy the 'in custody' requirement set forth at 28 U.S.C. § 2241(c) by establishing at a minimum that 'he is presently in custody' or is suffering a 'collateral consequence' of the challenged conduct." *Id*. at *2. The plaintiff has not claimed in any of his complaints that he is

in custody, nor that he is suffering any kind of collateral consequence. Therefore, there is no basis on which the plaintiff could succeed on his writ of habeas corpus against the defendants. Finally, the plaintiff has asserted claims for "War Crimes Violations." The plaintiff, for example, calls the Virginia judges who "stated that the plaintiff married a Japanese citizen in Seoul, Korea," and the judges that allegedly confirmed this conclusion, "liars and war criminals." Compl. I at ¶ 13. The general category of "war crimes violations" in this case is used to refer to decisions made by judges with whom the plaintiff disagreed, and is not a cause of action on which this Court can grant relief. Therefore, the plaintiff has failed to state a claim under Rule 12(b)(6).

The plaintiff fails to state a claim against the Congressional Defendants and the Korean Defendants for the additional reason that the complaint enumerates no claims against them. The Congressional Defendants are merely listed in the caption of Case No. 11-cv-1828. Listing a party in the caption is not sufficient to state a claim against the Congressional Defendants. Nor does the plaintiff bring any claim against the Korean Defendants. Instead, the plaintiff has used his Complaint as an opportunity to request that the Korean Defendants take particular actions. The plaintiff has invited the Korean Supreme Court, *inter alia*, to "order the Supreme Prosecutor's Office and the United States Forces Staff Judge Advocate to extradite to Korea" some of the defendants, including "Junko Ezure [a/k/a Junko Harbison]." Compl. I at ¶ 85. These calls to action to the Korean Defendants do not constitute claims on which relief can be granted. The plaintiff's claims in Case No. 11-cv-1828 must be dismissed under Rule 12(b)(6).

### B. Plaintiff's Claims are Barred by Res Judicata

"Under the doctrine of res judicata, or claim preclusion, a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2)

between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Porter v. Shah*, 606 F.3d 809, 813 (D.C. Cir. 2010) (citation omitted). The doctrine of res judicata helps advance the "the conclusive resolution of disputes" and "preclude[s] parties from contesting matters that they have had a full and fair opportunity to litigate[,] protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979) (citations omitted). Furthermore, "a 'final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been raised* in that action.'" *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). All of the requirements for res judicata are met here, where the plaintiff's complaints involve the same claims between some of the same parties as were earlier adjudicated in the Eastern District of Virginia, which issued a final decision on the merits of plaintiff's claims. The plaintiff's claims against parties in the Eastern District of Virginia case could have been brought in the earlier lawsuit and are thus barred from being brought again under the doctrine of res judicata.[11]

"Whether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.'" *Apotex, Inc. v. Food & Drug Administration*, 393 F.3d 210, 217 (D.C. Cir. 2004) (quoting *Drake*, 291 F.3d at 66). Here, there is no question that the plaintiff's claims in this action are related to the earlier Eastern District of Virginia case and share the same nucleus of facts. There, the Court commented that the "[t]he thrust of the fifty-six page, fourteen

---

[11] The plaintiff has already litigated claims from the same nucleus of facts against Attorney General Kenneth Cuccinelli, Judge David Beck, Judge Jean Clements, Judge Joseph Ellis, Judge Robert Humphreys, Edith Min, John C. Bowers, Matthew Lowery, William Neely, Wade Kizar, Junko Ezure (also known as Junko Harbison), Makoto Ezure, and Megumi Ezure.

count complaint appears to allege various due process and equal protection violations committed against the Plaintiff throughout his divorce and criminal proceedings in state court.  The alleged violations are based on the final orders, discovery orders, and an order for sanctions in those proceedings.  Plaintiff expressly alleges violations of the First, Fourth, Fifth, Sixth, Eighth, Ninth and Eleventh Amendments of the United States Constitution, as well as various treaties between the United States and Japan and Korea." *Harbison v. Commonwealth of Va.*, No. 10-cv-297, 2010 WL 3655980, at *2 (E.D. Va. 2010).

The "thrust" of the plaintiff's 76-page and 89-page complaints are the same.  While the plaintiff added to his earlier complaints before submitting the instant complaints, they are based on the same set of factual allegations at issue in the Eastern District of Virginia case.  As one example, in the prior action, as in this case, the plaintiff alleged that the Commonwealth Defendants were guilty of "criminally aid[ing] and abett[ing] kidnaping by fraudulent marriage to profit, provid[ing] state-sponsored polygamy . . . and immigration fraud." *Id.* at *3.  This set of allegations mirrors the allegations in the two complaints before this Court.  *See, e.g.*, Compl. I at ¶ 7 (alleging that the "lying Spotsylvania prosecutors knew that Plaintiff had never married or voluntarily cohabited to any persons in Virginia but maliciously indicted the unmarried Plaintiff to aid and abet the Japanese kidnappers, hostage takers, human traffickers, and illegal immigrants"); Compl. II at ¶ 15 (alleging that the "Virginia judges, prosecutors, and Private Attorneys knowingly colluded to have the unmarried Plaintiff imprisoned to conceal their state-sponsored immigration fraud, hostage-taking, human trafficking, and war crimes.").  This general set of claims was already considered by the Eastern District of Virginia.

Likewise, this case also shares some of the same parties as the Eastern District of Virginia case.  Similarly to the instant lawsuit, the earlier suit involved claims against the

"Commonwealth of Virginia, Junko Harbison, her two children, and numerous state actors, including various judges who had been involved in various stages of the related proceedings and employees of the Commonwealth Attorney, Treasurer, and Commissioner of Revenue, each in their official capacity." *Harbison*, 2010 WL 3655980 at *2. The claims of the plaintiff against all of these defendants, where there was a final decision on the merits, are therefore barred from being relitigated.[12] *See Harbison*, 2010 WL 3655977, at *1, *aff'd*, 413 Fed.Appx. 626 (4th Cir. 2011).

### C. Claims are Barred by the Rooker-Feldman Doctrine

Another basis for this Court's dismissing the claims as a whole is that it lacks jurisdiction to hear them under the Rooker-Feldman doctrine.[13] "The Rooker-Feldman doctrine prevents lower federal courts from hearing cases that amount to the functional equivalent of an appeal from a state court because they are without jurisdiction to do so." *Jerdine v. FDIC*, 730 F. Supp. 2d 218, 224 (D.D.C. 2010) (citations and internal quotation marks omitted). The doctrine is implicated in "cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The plaintiff's claims seem to be based on his frustration at the Virginia state judiciary for their decisions during his divorce proceedings and his subsequent indictment for unlawful marriage and bigamy. The Rooker-Feldman doctrine prevents this Court from reviewing those decisions.

---

[12] The federal defendants were added to the plaintiff's complaints following the decisions of the Eastern District of Virginia and the Fourth Circuit, so claims against those parties could not have been brought in the earlier suit.

[13] The *Rooker-Feldman* doctrine derives its name from two Supreme Court cases. *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *Dist.of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (U.S. 2005) (describing development of the doctrine).

**D. Claims against Judicial Defendants Barred by Judicial Immunity**

The plaintiff's claims against the judicial defendants are barred, additionally, because of the doctrine of judicial immunity. The Supreme Court has long recognized a "general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." *Stump v. Sparkman*, 435 U.S. 349, 355 (1978) (citation omitted); *see also Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985) (noting that the doctrine of judicial immunity is "firmly established"); *Bradley v. Fisher*, 80 U.S. 335, 341 (1871) ("Judges of courts of record of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly."). Courts in this Circuit have commented that "[a]bsolute immunity is necessary for judicial functions because judges must act upon [their] convictions, without apprehension of personal consequences to [themselves]." *Tinsley v. Widener*, 150 F. Supp. 2d 7, 11 (D.D.C. 2001) (citation and quotation marks omitted). "[S]o long as the act involves a judicial function, immunity applies regardless of whether the plaintiff is suing the judge in her individual or official capacity." *Edwards v. Wilkinson*, 233 F. Supp. 2d 34, 37 (D.D.C. 2002). Here, the plaintiff is challenging the members of the judiciary because of alleged action or inaction performed in their judicial capacity. *See, e.g.*, Compl. I at ¶ 23 (calling one of the County and Commonwealth Judicial Defendants a "liar and a war criminal" for recommending a finding that plaintiff's claims against members of the judiciary in an earlier action be dismissed). Accordingly, the plaintiff's claims against the Federal Judicial Defendants and the County and Commonwealth Judicial Defendants are barred by the doctrine of judicial immunity.

**E. Complaints are Facially Frivolous Under 28 U.S.C. § 1915(e)(2)(B)(i)**

The plaintiff's claims may all be dismissed for a final reason, namely that the complaints are facially frivolous under 28 U.S.C. § 1915(e)(2)(B)(i). The court "shall dismiss" a case "at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious." 28 U.S.C. § 1915(e)(2)(B)(i); *see also Malone v. Barry*, No. 12-0215, 2012 U.S. Dist. LEXIS 16364 at *1 (D.D.C. Feb. 7, 2012) ("the trial court has the authority to dismiss not only claims based on an indisputably meritless legal theory, but also claims whose factual contentions are clearly baseless"). The plaintiff's claims of kidnapping, human trafficking, forced marriage, and immigration fraud against dozens and dozens of federal and state officials and civilians are completely unsubstantiated and appear to be entirely fanciful and frivolous. Accordingly, the plaintiff's claims are subject to dismissal under 28 U.S.C. § 1915(e)(2)(B)(i). *See, e.g.*, *Neitzke v. Williams*, 490 U.S. 319 (1989) (a complaint is frivolous "where it lacks an arguable basis either in law or in fact"); *Hamm v. Obama*, No. 11-1429, 2011 U.S. DIST. LEXIS 97600 (D.D.C. Aug. 31, 2011) (dismissing frivolous complaint with prejudice); *Rogler v. United States HHS*, 620 F. Supp. 2d 123, 131 (D.D.C. 2009) (noting that "'repetitious filing' constitutes a 'frivolous or malicious' action within the meaning of 28 U.S.C. § 1915(e)(2)(B)"); *McCreary v. Heath*, No. 04-00623, 2005 WL 975736, at *2-3 (D.D.C. Apr. 22, 2005) (applying 28 U.S.C. § 1915(e)(2)(B)(i) to pro se plaintiff not proceeding *in forma pauperis* by dismissing complaint and imposing filing restrictions).

Furthermore, the plaintiff is hereby barred from any future filings against these defendants, or arising from these claims, in this Court without leave of the Court. *See id*. The plaintiff has already had his day in court with respect to these claims and these defendants. Any additional filings against these defendants and around this nucleus of facts would constitute harassment of the defendants and would amount to a waste of resources both for the defendants

and for this Court. "To protect the integrity of the courts and to prevent further harassment of the defendants, the plaintiff's filing of duplicative claims must stop." *Mikkilineni v. Penn Nat'l Mut. Cas. Ins. Co.*, 271 F. Supp. 2d 142, 143 (D.D.C. 2003); *Sparrow v. Reynolds*, 646 F. Supp. 834, 839 (D.D.C. 1986) ("a continuous pattern of groundless and vexatious litigation can, at some point, support an order against further filings of complaints without the permission of the court.") (citations omitted). As noted *supra*, the Civilian Defendants have also moved for Rule 11 sanctions against the plaintiff. *See* Case No. 11-cv-1828, ECF No. 18; Case No. 11-cv-1965, ECF No. 14. The Court declines to enter sanctions at this time against the *pro se* plaintiff, however, the plaintiff is warned that further filings in this Court of this nature without leave of the Court may result in sanctions.

## V.   CONCLUSION

For the reasons explained above, the Court will consolidate the plaintiff's two complaints under Civil Action No. 11-1828 (BAH). The consolidated Civil Action No. 11-1828 (BAH) will then be dismissed with prejudice. Furthermore, the plaintiff is barred from bringing any additional claims against these defendants, or arising from these claims, in this Court without leave of the Court. Additionally, the defendants are relieved of any obligation to respond to any pending or future filing by the plaintiff in this Court unless otherwise directed by the Court. An Order consistent with this Memorandum Opinion will be issued.

**DATED: March 14, 2012**

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge